# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **TRUSTMARK INSURANCE CO.** *Plaintiff and counter-defendant* | **CIVIL ACTION NO. 05-0515** |
| VS. | **MAGISTRATE JUDGE METHVIN** |
| **DANIEL KEHLER** *Defendant and counter-plaintiff* | **BY CONSENT OF THE PARTIES** |

## MEMORANDUM RULING ON MOTION FOR SUMMARY JUDGMENT
*(Rec. Doc. 11)*

This ERISA case[1] has been referred to the undersigned magistrate judge to conduct all proceedings pursuant to consent of the parties under 28 U.S.C. §636(c).

Before the court is the motion for summary judgment filed by plaintiff Trustmark Insurance Company ("Trustmark").[2] The motion is opposed by defendant Daniel Kehler ("Kehler"),[3] and Trustmark filed a reply brief.[4] For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART.**

*Factual and Procedural Background*

Trustmark seeks rescission of health insurance coverage for Kehler under a group health policy issued to Kehler's employer, Service Tool Company, L.L.C. ("Service Tool") of New Iberia, Louisiana. Trustmark alleges that Kehler made material misrepresentations which justify rescission of the policy.

---

[1] On June 17, 2005, the parties stipulated that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.*, governs this case and preempts Kegler's state law claims for benefits against Trustmark. See Rec. Doc. 9.

[2] Rec. Doc. 11.

[3] Rec. Doc. 14.

[4] Rec. Doc. 18.

The following facts are not in dispute: Kehler has been employed by Service Tool as an outside salesman since April 1992. Kehler was diagnosed with renal cell carcinoma with metastases, Stage IV, in April 2003. On October 18, 2004, Kehler completed a Group Enrollment Form ("GEF") in connection with his application for benefits from Trustmark. The GEF contains a space for the applicant to record the "Number of Hours Worked Per Week," and Kehler responded by indicating that he worked "over 40" hours per week.[5] Kehler received in-patient treatment at H. Lee Moffitt Hospital (a cancer treatment center) on four separate occasions during the months of September and October 2004, and he underwent the following additional courses of treatment for which he submitted bills to Trustmark:

| | |
|---|---|
| November 1-3, 2004 | Second course of high-dose IL-2 therapy |
| November 8-10, 2004 | Third dose of IL-2 therapy |
| November 15-17, 2004 | Fourth dose of IL-2 therapy |
| December 6-8, 2004 | Fifth dose of IL-2 therapy |
| December 13-16, 2004 | Sixth dose of IL-2 therapy |
| December 27-29, 2004 | Seventh dose of IL-2 therapy |
| January 5-8, 2005 | Eighth dose of IL-2 therapy[6] |

On November 1, 2004, the date the policy ostensibly went into effect, he was undergoing a series of in-patient hospital treatments and did not work 40 hours per week on a regular basis during that week.[7] However, prior to November 1, 2004, during the thirteen years that Kehler worked for Service Tool, he regularly worked over forty hours per week. Although Trustmark does not stipulate to the latter fact, it has offered no evidence to refute Kehler's affidavit that "in calendar year 2004, prior to November 1, 2004, I routinely and regularly worked in excess of 40 hours per

---

[5] See Trustmark's motion for summary judgment, Rec. Doc. 11, Exhibit "4-C."

[6] Id., Exhibit "4-E."

[7] Id., Exhibit "4-E," p. T-0039.

week in my position as an outside salesman for Service Tool Company, and earned in excess of the federal minimum wage while so doing."[8]

The policy's certificate of coverage states that if any of the information in the enrollment form is incorrect, Trustmark must be notified within ten days of receipt of the certificate, and that an error or omission may result in the loss of coverage.[9]

Shortly after Trustmark issued a certificate of coverage, it began to receive claims made by or on behalf of Kehler for payment of charges for in-patient services rendered to Kehler beginning on November 1, 2004. Upon learning that Kehler had been undergoing in-patient treatment for cancer prior to the time of his enrollment for coverage and on the effective date of his coverage under the policy, Trustmark notified Kehler by letter dated March 17, 2005 that it was rescinding its insurance coverage.[10] Trustmark also returned a premium check in the amount of $5,211.50 to Service Tool.

Trustmark filed suit in this court on March 22, 2005, seeking rescission of health insurance coverage for Kehler and seeking a declaratory judgment in its favor that it has no obligation to pay Kehler's health insurance claims because of the alleged material misrepresentation in the application. Kehler filed a counterclaim against Trustmark under Louisiana law for arbitrary and capricious failure to pay insurance benefits.

*Analysis*

---

[8] Affidavit of Daniel Kehler attached to Memorandum in Opposition, Rec. Doc. 14

[9] Id., Exhibit "1-C."

[10] Id., Exhibit "4-F."

Summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "when viewed in the light most favorable to the nonmovant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510- 11, 91 L.Ed.2d 202, 212-13 (1986). An issue about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248, 106 S.Ct. at 2509-10. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. Id. at 255, 106 S.Ct. at 2513-14. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986), the nonmovant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56(e): Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Conclusionary denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. S.E.C. v. Recile, 10 F.3d 1093, 1097 (5th Cir.1993).

Trustmark seeks summary judgment both on its main demand and on Kehler's counterclaim for benefits under Louisiana law. Trustmark contends that on the main demand, there are no genuine issues of material fact regarding Kehler's material misrepresentation of the number of hours worked at the time he signed the Enrollment Form. On Kehler's counterclaim for benefits, Trustmark argues that Kehler is not entitled to relief because he failed to exhaust administrative remedies, and, furthermore, that he is not entitled to penalties under ERISA.

1. **Trustmark's Main Demand – Claim for Rescission of Coverage Under the Policy**

Trustmark contends that the policy is void *ab initio* because Kehler's statement on the application that he worked "over 40" hours per week was a material misrepresentation. Trustmark therefore seeks summary judgment on its claim for rescission of Kehler's coverage.

In order to rescind coverage under federal common law, "the insurer must prove that the insured made a fraudulent *or* material misrepresentation in his application for enrollment that justifiably induced the issuance of the policy. Good faith is irrelevant." Tingle v. Pacific Mutual Ins. Co., 837 F. Supp 191, 193 (W.D La. 1993) (on remand, emphasis added). A material misrepresentation is one which "materially affects the insurer's risk or the hazard assumed by the insurer." Id. Under ERISA, an insurer may void insurance coverage within two years of a policy's issuance if a material misrepresentation was made, and there is no requirement that fraud or actual intent to deceive be proven in order to void the policy. See, e.g., Tingle v. Pacific Mutual Ins. Co., 996 F.2d 105 (5th Cir. 1993) (ERISA preempts La. Rev. Stat. §22:619, which requires that an insurer seeking to void a policy due to material misrepresentations prove that an insured had an "intent to deceive"); Provident Life and Accident Ins. Co. v. Sharpless, 364 F.3d 634 (5th Cir. 2004) (analyzing whether insured made a fraudulent misstatement, where the action to rescind was brought more than two years after the policy's issuance and the contract required proof of fraud to rescind where rescission was sought more than two years after the policy's issuance).

The application consists of a single page containing a number of boxes requesting minimal, basic information, including the applicant's name, address, social security number, birth date, occupation, and intended beneficiary. There are only two questions regarding work history. In the box stating, "Date of Full Time Employment," Kehler wrote "03/12/92." In the

6

box stating, "Number of Hours Worked Per Week," Kehler wrote "over 40."[11] There are no questions on the form addressed to the state of the applicant's health, health history, or anything similar.

Trustmark contends that the answer "over 40" was a material misrepresentation because Kehler did not work over 40 hours per week during the month of November, 2004, when the policy went into effect. Trustmark's position is unpersuasive. The question regarding number of hours worked per week immediately followed the question concerning the first date of full-time employment, which in Kehler's case was March of 1992. The question regarding number of hours worked is not limited to hours worked in the previous week, month, or year. In fact, a reasonable reading of the question is "on average, how many hours per week have you worked since commencement of full-time employment."

Under the Restatement (Second) of Contracts, any ambiguity with respect to the terminology used in the insurance application should be construed in the applicant's favor and against the interests of the insurance company that drafted it, to wit:

> *a. Rationale. Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party.* The rule is often invoked in cases of standardized contracts and in cases where the drafting party has the stronger bargaining position, but it is not limited to such cases. It is in strictness a rule of legal effect, sometimes called construction, as well as interpretation: its operation depends on the positions of the parties as they appear in litigation, and sometimes the result is hard to distinguish from a denial of effect to an unconscionable clause.

---

[11] See Trustmark's memorandum in support of motion for summary judgement, Exhibit 3-C.

Restatement (Second) Contracts, §206 (emphasis added). See also Keszenheimer v. Reliance Standard Life Ins. Co., 402 F.3d 504, 507 (5th Cir. 2005) (in case interpreting ERISA plan provisions, contract language should be interpreted "in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one," but that if plan terms remain ambiguous after application of ordinary principles of contract interpretation, "they are construed strictly in favor of the insured."); Jones v. Georgia Pacific Corp., 90 F.3d 114, 116 (5th Cir. 1996) (in construing ERISA plans, Fifth Circuit follows rule of *contra proferentem,* which dictates that "when plan terms remain ambiguous after applying ordinary principles of contract interpretation, courts are to construe them strictly in favor of the insured.").

Here, Trustmark, as the drafter of the application, was in the best position to know and elicit from prospective insureds the information it was trying to obtain. Therefore, if Trustmark intended to elicit information concerning the number of hours worked by a particular applicant in the past week or month, it could have requested that information. Indeed, Kehler states in his affidavit that he was never asked by Trustmark how many hours he worked in the seven days immediately prior to filling out the enrollment form, or how many hours he actually worked on the day he filled out the form.[12] Kehler further states that, had he been on vacation the week before filling out the application, he would not reasonably be expected to respond that he worked "0" hours per week in response to that portion of the application. More pertinently, if Trustmark wanted to know if Kehler or any other applicant had a serious illness, that information could have been specifically requested. The application itself contains no requests for health-related information. Trustmark's failure to request such information cannot be held against an insured,

---

[12] Id., ¶7.

and it cannot be heard now to argue that the purpose of questions regarding the number of hours worked each week was actually to glean information regarding the specific health history of each applicant. Such an argument is unreasonable and unfounded.

Similarly, Trustmark's argument that Kehler's failure to notify it of an inaccuracy in his application within ten days of receiving the certificate of coverage is also without merit. Kehler argues that he did not receive the certificate, and that, even if he had, there was no incorrect information in the application, so he would not have notified Trustmark of any error in the application.

Thus, the court construes the language in the insurance application against Trustmark and concludes that Kehler's application contains no material misrepresentation.

**2.** *Sua Sponte* **Summary Judgment in Favor of Kehler**

After review of the all of the evidence in this case and the arguments of the parties, the court concludes that it is appropriate to grant summary judgment in *Kehler's* favor on the question of material misrepresentation, despite the fact that he did not move for such relief. District courts are empowered to enter summary judgment *sua sponte,* so long as the moving party was on notice that it had to come forward with all of its evidence. See Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), cited in Geraghty and Miller, Inc. v. Conoco Inc., 234 F.3d 917, 923 (5th Cir. 2000). See also C & W Asset Acquisition, L.L.C. v. Knox, 2003 WL 22005873, *1 (N.D.Tex. 2003) (district courts possess power to enter summary judgment *sua sponte,* so long as losing party was on notice that it had to come forward with all evidence), *aff'd*, 104 Fed.Appx. 936, 938-39 (5th Cir. 2004) (unpublished). Thus, "when a moving party's own evidence shows an undisputed material fact that bars the moving party's claims as a matter of law, the court may *sua sponte* grant summary judgment to the opposing

party." C & W Asset Acquisition, 2003 WL 22005873 at *1, citing Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311-12 (9th Cir.1982) (see cases and citations cited therein).  If the court fails to provide such notice, the grant of summary judgment will be reversed unless the error is harmless. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 28 F.3d 1388, 1398 (5th Cir. 1994); C& W Asset Acquisition, 104 Fed. Appx. at 938-39.  The failure to provide notice is harmless error "when the nonmovant has *no* additional evidence *or* if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact."  Id.  Thus, courts have held that when an issue has been fully briefed by the parties and no additional evidence would create a genuine issue of material fact, summary judgment in favor of a non-moving party is appropriate:

> The ground upon which the motion for summary judgment is based is known to all parties, adequate warning has been given to all parties and the issues have been fully briefed by the parties. It is in the interest of justice and judicial economy to consider the legal issue before the Court on cross motions for summary judgment.

Metropolitan Property and Liability Ins. Co. v. Landry, 729 F.Supp. 1581, 1582 (M.D.La. 1990). See also Ogima v. Rodriguez, 799 F.Supp. 626, 632 (M.D.La. 1992) (court *sua sponte* treated opposition brief to motion for summary judgment as a cross-motion for summary judgment, finding that the issues between the parties had been fully briefed, and the ground upon which the motion for summary judgment is based was known to all parties, noting that it was "in the interest of justice and judicial economy to consider the legal issue before the Court on cross motions for summary judgment.").

In the instant case, the court has not formally provided the parties with notice that it is considering granting summary judgment *sua sponte* in favor of Kehler.  Nevertheless, the issue of a material misrepresentation was fully briefed by both parties, and Trustmark has provided no

evidence of a material misrepresentation in Kehler's application. The court also notes that, in the telephone status conference with counsel on June 15, 2005, the court stated its concern that if it denied Trustmark's motion for summary judgment on the issue of material misrepresentation, Trustmark would attempt to raise that issue as a defense in a benefits review determination at a later stage, thus giving Trustmark "two bites at the apple." Although the court did not formally put Trustmark on notice at that time that summary judgment might be entered in Kehler's favor, the court clearly stated its concerns regarding the issue, particularly considering the nature and seriousness of Kehler's illness, the fact that he has been denied treatment by his providers since Trustmark ceased paying his health insurance benefits, and the fact that a benefits review determination will take significant time to resolve. The court concludes that this additional circumstance weighs in favor of finding that the issue of a material misrepresentation is ripe for summary disposition.

Considering the foregoing, the court concludes that it is in the interest of justice and judicial economy that summary judgment on the issue of a material representation in Kehler's application for benefits be granted in Kehler's favor.

**3.      Kehler's Counterclaim – Claim for Benefits and Penalties**

Trustmark contends that, if summary judgment on its main demand is denied, Kehler's claim for benefits should nevertheless be dismissed as premature. Trustmark contends that because it sent to Kehler a letter of rescission on March 17, 2005, no determination has been made on the merits of Kehler's claim for benefits, and thus, Kehler has not exhausted his administrative remedies. Trustmark argues that an individual cannot seek payment of benefits under an ERISA plan prior to completing the administrative review process challenging the plan

administrator's benefits decision. Trustmark also contends that, under ERISA, Kehler is not entitled penalties for Trustmark's failure to pay benefits. Kehler does not appear to challenge these assertions in his opposition brief.

Although ERISA itself is silent on the question of exhaustion of administrative remedies, the Fifth Circuit has adopted the reasoning of the Ninth Circuit in concluding that the common law and Congressional intent contemplate that a plaintiff generally must exhaust administrative remedies afforded by an ERISA plan before suing to obtain benefits wrongfully denied. See Chailland v. Brown & Root, Inc., 45 F.3d 947, 950 (5th Cir.1995) (noting that the Third, Ninth, and Tenth Circuits do not require exhaustion – Zipf v. American Telephone & Telegraph Co., 799 F.2d 889, 891-94 (3rd Cir.1986); Amaro v. Continental Can Co., 724 F.2d 747, 750-52 (9th Cir.1984); Held v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197, 1204-05 (10th Cir.1990) – while the Seventh Circuit vests district courts with discretion to require exhaustion, Kross v. Western Electric Co., 701 F.2d 1238, 1243-45 (7th Cir.1983), and the Eleventh Circuit apparently requires it. Mason v. Continental Group, Inc., 763 F.2d 1219, 1225-27 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986)), citing Denton v. First National Bank, 765 F.2d 1295, 1300-03 (5th Cir.1985)).

Here, the Plan document contains a three-page notice of claim review and appeals rights under federal law, which clearly delineates the timing of claim determinations and the content of adverse benefits determinations.[13] Clearly, Kehler has not filed a claim for benefits with the plan administrator, and therefore, there has been no benefits determination. Considering the

---

[13] See Trustmark's motion for summary judgment, Rec. Doc. 11, Exhibit "4-B," pp. 77-79.

foregoing, the court concludes that Kehler's counterclaim for benefits is premature. Nevertheless, the court also notes that, given the court's ruling herein on the issue of material misrepresentation, Trustmark will not be permitted to raise material misrepresentation as a defense in denying a properly-presented claim for benefits.

Finally, the court also concludes that, pursuant to ERISA, Kehler is not entitled to extra-contractual benefits in the form of penalties. In <u>Massachusetts Mutual Life Ins. Co v. Russell</u>, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093 (1985), the Supreme Court held the following with respect to claims for penalties:

> Thus, the relevant text of ERISA, the structure of the entire statute, and its legislative history all support the conclusion that in § 409(a) Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims.

As Kehler has stipulated that ERISA governs the case at issue, the provision of ERISA preempts any state law that may have permitted recovery of such penalties. Considering the foregoing, the court concludes that Trustmark is entitled to summary judgment on Kehler's counterclaim for penalties.

Considering the foregoing,

**IT IS HEREBY ORDERED that** Trustmark's motion for summary judgment is **GRANTED** on Kehler's claim for punitive damages and **DENIED** on all other claims. **IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in Kehler's favor on Trustmark's claim for rescission on grounds of material misrepresentation, the court concluding that there is no evidence of any material misrepresentation in Kehler's application for benefits.

Signed at Lafayette, Louisiana, on September 6, 2005.

_____
Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)